UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
JOCELYN DESJARDINS,

                         Petitioner,

             -against-

STEVEN RECETTE,

                    Respondent.
------------------------------------------------------x

**MEMORANDUM & ORDER**

15 CV 526 (RJD)

DEARIE, District Judge.

       Before the Court is the application of petitioner Jocelyn Desjardins for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted in 2009, after trial in Supreme

Court, Kings County, of five counts of robbery in the first degree (N.Y. P.L. § 160.15[4]), five

counts of robbery in the second degree (N.Y. P.L. §160.10[1]), and one count of criminal

possession of stolen property in the third degree (N.Y. P.L. §165.50).  He was adjudicated a non-

violent second felony offender and sentenced to concurrent terms of incarceration of twenty-

three years plus five years' post-release supervision on the first-degree robbery counts, fifteen

years plus five years' post-release supervision on the second-degree robbery counts, and three

and one-half to seven years on the stolen-property count.[1]

       The charges arose out of petitioner's participation in five similarly executed robberies of

Brooklyn electronics stores.  In each, three or four African-American men entered a store, spoke

---

[1] Petitioner's co-defendant Sam Arthur pled guilty to four counts of second-degree robbery and
co-defendant Kenneth Jones pled guilty to five counts of second-degree robbery.  Each was
sentenced to concurrent prison terms of 7 years plus 5 years' post-release supervision.  ECF No.
6-1 at 6.

to its manager, by word and gesture conveyed the impression they were armed,[2] and unloaded merchandise from the store in large black garbage bags.  The crimes occurred on December 6, 2006 (the "first robbery"), January 4, 2007 (the "second robbery"), February 18, 2007 (the "third robbery"), March 9, 2007 (the "fourth robbery"), and March 16, 2007 (the "fifth robbery").  No weapon was recovered.

Petitioner was apprehended after a high-speed chase following the fifth robbery.  Police recovered stolen property from the wrecked getaway vehicle and witnessed petitioner discarding stolen cameras during his flight and as he was captured.  For four of the five robberies (the first, second, third and fifth), store-employee witnesses identified petitioner, both during a line-up and at trial, as one of the robbers.  Witnesses to the fourth robbery could not make a trial identification due to the passage of time and there was no evidence that they viewed a lineup.[3] On direct appeal, petitioner argued that the evidence was insufficient to prove his identity as a participant in that fourth robbery, and the Appellate Division agreed, vacating the convictions relating to that incident.  People v. Desjardins, 113 A.D.3d 787 (2d Dep't 2014).  As will be discussed, the Appellate Division rejected petitioner's other claims, some of which he raises again here, and affirmed his conviction and sentence as modified.  Id.  The New York Court of Appeals denied leave to appeal.  People v. Desjardins, 23 N.Y.3d 1035 (July 15, 2014).

---

[2] Representative is the account of Jeffrey Mark, an employee at the Radio Shack where the last robbery occurred.  Mark testified in pertinent part that, "[t]he gentleman in the brown jacket came up and he put his hand in his jacket and he said you know that this is," and that he (Mark) "believed" that the robber "had something in his jacket" that was "[p]robably a gun."  ECF No. 6-3 at 133-34, 393 (Trial Transcript ["TT"] at 39-40, 300).

[3] As discussed *infra* at pp. 4-7, surveillance videos of the second, third and fourth robberies were also admitted into evidence.

2

Petitioner advances three claims in the numbered "grounds" section of the petition as bases for habeas relief: (1) that he was denied his due process right to a fair trial when the court refused to charge robbery in the third degree as a lesser-included offense (ECF No. 1 at 5); (2) that the trial court "deprived [him] of his right to an effective summation when it repeatedly sustained the prosecution's objections to legitimate summation arguments by defense counsel" (id. at 6); and (3) that his prison sentence of twenty-three years is excessive. Id. at 8. These claims are exhausted.

Liberally construed, the pro se petition advances a fourth claim. Petitioner left the first lines of the "Ground Four" section of the form blank but responded "No" to the question asking whether that ground had been exhausted, id. at 11, and identified that unexhausted ground as "Prosecutorial misconduct [ ] based on how the destroyed evidence was not part of petitioner['s] evidence to a fair trial." Id. The related allegation in the petition is that, "[t]he evidence presented at the hearings and trial clearly did not show that petitioner committed any robbery [ ] because the video/tapes were destroyed which [ ] deprived petitioner of a fair trial and violates his rights beyond a miscarriage of justice." Id. at 6.

As will be discussed, none of these claims is a basis for habeas relief. The application is therefore denied and the petition dismissed.

3

**DISCUSSION**[4]

**I.       "Mixed" Petitions and the Unexhausted Claim**

The threshold matter requiring attention is the presence of both exhausted and unexhausted claims in the petition.  Petitioner concedes that the destroyed-evidence claim is unexhausted, respondent agrees, and the Court's review of the record confirms that there was no discussion of prosecutorial misconduct or destroyed videotapes in petitioner's or respondent's appellate brief.

Unexhausted claims can*not* be the basis of habeas relief.  28 U.S.C. § 2254(b) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State…").  See generally Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc).  Further, an unexhausted claim "shall not be deemed …exhausted" as long as the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).  Here, as respondent agrees, petitioner still has available to him the procedure of a motion for post-conviction relief under §440.10(1), which may be made "[a]t any time after the entry of a judgment."  Id.

The question of whether to open the door to this option through a stay (presumably *nunc pro tunc*) pursuant to Rhines v. Weber, 544 U.S. 269 (2005), turns on, inter alia, the Court's capacity at this stage to assess the likely merits of the claim.  See id. at 277-78 (stay available

---

[4] Additional facts are discussed below in the context of the legal claim to which they relate.

only in limited circumstances and upon petitioner's showing "1) that he had good cause for his failure to exhaust his claims first in state court; 2) that his claims are not plainly meritless; and 3) that he has not engaged in intentionally dilatory litigation tactics") (internal quotations omitted). Alternatively, the Court has the statutory authority to deny a mixed petition on the merits—but again, only if it can assess the merits of the claim at this stage and conclude that they fail.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies in the courts of the State.").

Here, petitioner has named his unexhausted claim, but has done nothing else, offering no explanation or factual particulars and, as noted, the unexhausted nature of the claim means there is nothing in the state appellate briefs to guide the Court toward relevant features of the record.[5] The trial record before the Court shows that regularly maintained electronics-store surveillance videos were introduced for the second, third and fourth robberies.  ECF No 6-4 at 21-24, 106, 264-65 (Trial Transcript ("TT") at 441-444, 526, 684-85), and that no such videos were introduced for the first or fifth robberies.  The testimony concerning these videos explored the store-employee witnesses' degree of certainty about whether petitioner was one of the individuals captured in the videos, and during the defense summation, counsel referenced the three videos, arguing that "when you view those videotapes … it's not enough to say somebody looks like him [or that] it's probably him, but they must prove…his identity beyond a reasonable

---

[5] The failure of the appellate briefs to address the alleged destruction of videotapes is not dispositive:  the Court's research shows that subsequent to the filing of his petition here, petitioner also sought in state court a writ of error coram nobis—the vehicle through which a defendant asserts a claim that appellate counsel was ineffective.  The Court has available to it the decision summarily denying that claim, People v. Desjardins, 186 A.D.3d 1241 (2d Dep't Sep 2, 2020), but not the briefs, so it cannot speculate on the nature of the grounds advanced.

doubt." ECF No. 6-4 at 388, TT at 588.  The most the Court can locate arguably relating to a possible "destruction of evidence" claim is the testimony of a police officer that, with respect to the first robbery, he received a surveillance video from the electronics store that "malfunctioned" when played and that when he went back to the store, he was told by an employee that the original had been destroyed and no copies existed.  ECF No. 6-3 at 479-81 (TT at 386-88).

To be clear: if this is all that petitioner has then his claim fails on the merits.  Allegations of prosecutorial destruction of evidence are treated as distinct from claims under Brady v. Maryland, 373 U.S. 83 (1963), because they involve evidence that can no longer be produced, United States v. Tyree, 279 Fed. App'x 31 33 (2d Cir.), cert. denied, 555 U.S. 963 (2008), and "only rise[ ] to a constitutional violation when three requirements are met: (1) the government must have acted in bad faith in destroying the evidence; (2) the 'evidence must . . .  possess an exculpatory value that was apparent before [it] was destroyed'; and (3) the defendant must be 'unable to obtain comparable evidence by other reasonably available means." Dark v. Crowley, 2020 WL 6291420, at*6 (W.D.N.Y Oct. 27, 2020) (quoting Tyree, 279 Fed. Appx. at 33).

Based on the materials now before the Court, petitioner plainly fails to meet this standard, as the only trial testimony the Court has located referring to a destroyed video tape *does not attribute that destruction to the police*.  Therefore the Court exercises its authority to deny the merits of this unexhausted claim.  Even while affording latitude to petitioner as a pro se litigant, it remains his burden to prove his claim.  See, e.g., Pikney v. Keane, 920 F.2d 1090, 1094 (1990) ("Habeas corpus is not a neutral proceeding in which the petitioner and the State stand on an equal footing.  Rather…[the] prisoner seeks to overturn a presumptively valid judgment of conviction [and] [b]ecause of this, the petitioner generally bears the burden of proof throughout the habeas proceeding.").

The absence of a basis for attributing the alleged destruction of evidence to law enforcement also renders the claim "plainly meritless" for purpose of a possible Rhines stay. Even if the claim had arguable merit, a Rhines stay would be appropriate only if petitioner also showed "good cause" for his failure to exhaust and that he has not engaged in intentionally dilatory tactics.  Id. at 277-78.  In his petition he pleads that he "is a layman to the land of the laws and for this reason he did not present said issue," and that he "does not have the knowledge defense counsel has to understand what needs to be preserved to raise such issue."   ECF No. 1 at 11.  Without reaching the question of whether petitioner has shown "good cause," see generally Hunter v. Annucci, 19 CV 1321 (MKB), 2020 WL 9816004, at *5 (E.D.N.Y. Dec. 18, 2020) (reviewing the "disagreement among courts as to what constitutes 'good cause' under Rhines"), in the six years since petitioner acknowledged the unexhausted nature of his destroyed-evidence claim, he does not appear to have elected to pursue that claim through the long-available means of a CPL §440.10 motion.  The Court's electronic search of the dockets in Kings County Supreme Court, where petitioner would have had to file that motion, shows no matters in which petitioner is a party during the relevant time.  There seems little point in further delaying adjudication of his petition *now* in order to invite him to do so.

Finally, apart from these procedural considerations, in light of the record as a whole, the Court is confident that the unexhausted claim would not provide a basis for habeas relief.  On the question of petitioner's identity, store-employee eyewitnesses to each of the four robberies identified petitioner at trial and in a lineup as a participant in the crime.  The surveillance videos, while part of the state's case, were hardly the heart of it.  Further, with respect to the three surveillance videos that were admitted, their arguable shortcomings were fully explored on cross-examination and in the defense summation.  The notion underlying petitioner's

unexhausted claim—that exculpatory surveillance video once existed and was destroyed by law enforcement—is simply too speculative to warrant further attention.

## II. Petitioner's Three Exhausted Claims

### A.      General Habeas Standards

Habeas relief is authorized "only on the ground that [an individual] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where, as here, purportedly federal claims advanced as grounds for habeas relief were already decided by a state court, the habeas court's review of those decisions is highly deferential.  As the habeas statute provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1), as amended by the Antiterrorism and Death Penalty Act of 1996 ("AEDPA").  As the Supreme Court has made emphatically clear: "The federal habeas statute ... imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases. The statute respects the authority and ability of state courts and their dedication to the protection of constitutional rights."  Shoop v. Hill, 139 S. Ct. 504, 506-07 (2019) (internal quotations and citations omitted).  See also Burt v. Titlow, 571 U.S. 12, 16 (2013) (federal habeas courts "will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy") (internal quotations, citations and alterations omitted); Renico v. Lett, 559 U.S. 766, 773 (2010)

8

("AEDPA [ ] imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt") (internal quotations omitted). But see Brumfield v. Cain, 576 U.S. 305, 314 (2015) ("As we have also observed, however, even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review, and does not by definition preclude relief.") (internal quotation marks, citation and alterations omitted).

Each component of the standard set forth in the habeas standard has been construed to advance these principles of federalism. First, as the Supreme Court has explained, "[a] legal principle is 'clearly established within the meaning of this provision only when it is embodied in a holding of this Court," Thayler v. Haynes, 559 U.S. 43, 47 (2010), "as opposed to the dicta," Williams v. Taylor, 529 U.S. 362, 412 (2000), or the holdings of federal appellate courts. Carey v. Musladin, 549 U.S. 70, 74 (2006).

As the Supreme Court has further instructed, a state court decision is "contrary to" established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decided a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 313 (2000). The state court decision is an "unreasonable application of" that federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. Unreasonableness for section 2254(d)(1) purposes, however, is a "bar [that] is not reached where fairminded jurists could disagree on the correctness of the state court's decision." Orlando v. Nassau Cty. Dist. Attorney's Office, 915 F.3d 113, 121 (2d Cir. 2019) (internal quotation and citation omitted). Rather, to be "an unreasonable application" of federal law, a state court decision "must be so

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Shoop, 139 S. Ct. at 507. See also Virginia v. Le Blanc, 137 S. Ct. 1726, 1728 (2017) ("In order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice") (internal quotation marks and citations omitted).

Additionally, under the less frequently invoked second branch of § 2254(d), a petitioner may seek habeas relief by challenging the factual basis of the adverse state court ruling.  See 28 U.S.C. § 2254(d)(2) (habeas court may overturn the state court's decision only if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.")  For purposes of Section 2254(d)(2), a "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010).  Habeas challenges to a state court's factual findings are also subject to 28 U.S.C. § 2254(e)(1), which provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[6]

---

[6] The Supreme Court "has not yet defined the precise relationship between §2254(d)(2) and §2254(e)(1)."  Brumfield, 576 U.S. at 322 (internal quotation and citation omitted).  The Second Circuit, to date, "proceed[s] under the assumption that 'satisfaction of either inquiry is sufficient.'"  Fernandez v. Capra, 916 F.3d 215, 221 n.1 (2d Cir. 2019) (quoting Channer v. Brooks, 320 F.3d 188, 194 (2d Cir. 2003)).

**B.**     **Analysis of Petitioner's Claims**

1.     The Lesser-Included-Offense Claim

For each of the robberies, the trial court submitted to the jury one count of robbery in the first degree under subdivision four of Penal Law § 160.15, which defines the crime as the forcible stealing of property in which a participant "[d]isplays what appears to be a pistol, revolver…or other firearm," and robbery in the second degree under subdivision one of Penal Law §160.10, which defines the crime as the forcible stealing of property during which the defendant "is aided by another person actually present."  Because no weapon was recovered, petitioner requested that the court also submit, as a lesser-included offense of first-degree robbery, the crime of robbery in the third-degree, which is defined simply as "forcibly steal[ing] property."  N.Y. Penal Law § 160.05.

The trial court rejected the request because of the non-negotiability of the second-degree charge.  The court reasoned that there was such "clear and integrated" evidence that petitioner "was acting in concert with at least another person" that it would be "sheer speculation" to suggest otherwise.  ECF No. 6-4 at 376 (TT at 846).  That count, the court further reasoned, "covers the situation where the jury … might come to the conclusion that … display[ ] [of] what appears to be [a firearm] is not made out."  Id. at 377 (TT at 847).  In short, the trial court agreed with the prosecution's position that "[t]here is no reasonable view of the evidence presented . . . that would support a guilty verdict of [r]obbery in the [t]hird [d]egree but not [r]obbery in the second [d]egree."  ECF No. 6-4 at 371 (TT at 842).

The Appellate Division, affirming the conviction, likewise concluded that, "contrary to [petitioner's] contention, the trial court properly denied his request to have robbery in the third degree . . . charged as a lesser-included offense of robbery in the first degree, pertaining to the

11

[first, second, third, and fifth] robberies."  <u>Desjardins</u>, 113 A.D.3d at 787.

Because this is not a capital case, petitioner's claim does not present an issue for federal habeas review.  In <u>Beck v. Alabama</u>, 447 U.S. 625, 637-38 (1980), the Supreme Court held that due process requires the submission of jury instructions on lesser-included offenses in capital cases.  Sixteen years later, in <u>Jones v. Hoffman</u>, 86 F.3d 46 (2d Cir. 1996), the Circuit collected its caselaw recognizing that "[n]either the Supreme Court nor [the Second] Circuit ha[d] decided whether the failure to instruct a jury on lesser included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition."  <u>Id.</u> at 48 (internal citation and quotation omitted).  The Circuit then concluded as follows: "Since a decision interpreting the Constitution to require the submission of instructions on lesser-included offense in non-capital cases would involve the announcement of a new rule, we hold that <u>Teague</u> precludes our review of the issue."  <u>Id.</u>[7]

Accordingly, district courts in the Second Circuit regularly hold that habeas review of a state trial court's failure to charge the jury on lesser-included offenses in noncapital cases is precluded.  <u>See</u>, <u>e.g.</u>, <u>See generally</u> <u>Taylor v. Connelly</u>, 18 F. Supp.3d 242 (E.D.N.Y. 2014) (Spatt, J.), <u>app. dismissed</u>, No. 14-1987 (2d Cir. May 22, 2015) (collecting cases); <u>Johnson v. Colvin</u>, 15-CV-5466 (PKC), 2018 WL 6250510, at * 8 (E.D.N.Y. Nov. 29, 2018) (petitioner's

---

[7] In <u>Teague v Lane</u>, 489 U.S. 288 (1989), the Supreme Court held that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively … through one of the two exceptions we have articulated."  <u>Id.</u> at 316.  The Circuit in <u>Jones</u> concluded "neither of the two narrowly drawn" <u>Teague</u> exceptions applied to the "lesser-included offense rule" because that rule "does not decriminalize a particular class of conduct, nor does it fall within the small core of 'watershed' rules requiring the observance of certain procedures that are implicit in the concept of ordered liberty."  86 F.3d at 48.

12

claim that counsel was ineffective for failing to request charge on second-degree robbery as a lesser-included offense "is not cognizable on federal habeas review," citing, *inter alia*, <u>Jones v. Hoffman</u> and <u>Taylor v. Connelly</u>)

In any event, as the Appellate Division correctly determined, the claim is meritless under state law. As reflected in the parties' state appellate briefs, <u>see</u> ECF No. 6-1 at 30, 71, there is no dispute concerning that law. New York CPL § 300.50 provides, in subdivision (1), that when instructing the jury, the court "in its discretion may, in addition to submitting the greatest offense which it is required to submit, submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater," and in subsection (2) that, "[i]f the court is authorized by subdivision one to submit a lesser included offense and is requested by either party to do so, it must do so." Subdivision one also provides, however, that "[i]f there is no reasonable view of the evidence which would support such a finding, the court may not submit such lesser offense." <u>Id.</u>

The Appellate Division applied this standard when it concluded as follows:

Viewing the evidence in the light most favorable to [petitioner], the robbery victims' testimony established that during each of these robberies, one or more of the perpetrators consciously manifested the presence of an object to one or more of the victims in such a way that the victim reasonably believed the perpetrator had a weapon. Thus, no reasonable view of the evidence supported charging robbery in the third degree, which does not require the display of a weapon, as a lesser-included offense.

<u>Id.</u> (internal citations).

Further, the Appellate Division applied the standards correctly, as the record fully supports the Appellate Division's view of the trial testimony: for each robbery, witnesses testified that the robbers, by word and gesture, created the impression that they were armed. <u>See</u>

13

ECF No. 6-3 at 428-29, 455-56 (TT at 335-36, 362-63) (first robbery) (robber said "if you love

your life, don't move" while "sticking his hand…under his shirt"; victim thought "he had some

kind of weapon under his shirt that could harm me…[m]aybe a gun"); ECF No. 6-4 at 7-9 (TT at

426-429) (second robbery) (robber said "you know what time it is" and put his arm behind his

back; employee "took…that to mean" that it was a robbery and that there "could have been a

weapon"); id. at 170-172 (TT at 589-92) (third robbery) (robber put his hand inside his jacket

and said "you know what this is;" this "made [victim] think" that robber had a weapon

"underneath there"); ECF No. 6-3 at 133-34, 300 (TT at 39-40, 300) (fifth robbery) (see note 1

supra). [8]

Finally, for these same reasons, the alleged deprivation of due process that petitioner says

resulted from the alleged jury instruction error necessarily fails as a basis for habeas relief.[9]

---

[8] As the trial court instructed the jury, for the "display" theory of first-degree robbery under New
York law," the state must prove, in pertinent part, that "[t]he defendant . . . consciously
display[ed] something that could reasonably be perceived as a firearm, with the intent of
compelling an owner of property to deliver [it] up or for the purpose of preventing or
overcoming resistance to the taking," and that "the display . . . actually be witnessed in some
manner by the victim—i.e., it must appear to the victim by sight, touch or sound that the victim
is threatened by a firearm."  ECF No. 6-4 at 567-68 (TT at 1034-35).  Further, "even a hand
consciously concealed in clothing may suffice if under all the circumstances the defendant's
conduct, or the conduct of a person acting in concert with the defendant, could reasonably lead
the victim to believe that a gun is being used during the robbery."  Id. at 568 (TT at 1035). See
generally Gonzalez v. Reiner, 177 F. Supp.2d 211, 218 (S.D.N.Y. 2001) ("display" element of
first-degree robbery under New York law "has been construed broadly") (collecting authorities).

[9] Although the Appellate Division decision does not address due process in the context of this
claim, that component of the claim is exhausted because petitioner's appellate brief does cast the
refusal to charge third-degree robbery as a deprivation of his due process right to a fair trial.
ECF No. 6-1 at 3.

      2.      <u>The Summation Claim</u>

Petitioner claims that he is entitled to habeas relief because the court sustained three of the prosecution's objections to portions of the defense summation.  <u>See</u> ECF No. 6-4 at 435, 433, 448 (TT at 896, 903, 918).  In two of the instances defense counsel argued to the jury that the fact that none of the recovered fingerprints were petitioner's established reasonable doubt; after sustaining the first objection the court told the jury that it "will explain to you later about the instructions on the law and the meaning [of] beyond a reasonable doubt," and after the second, that it "will explain the reason about it at the end of the case."  ECF No. 6-4 at 425, 433 (TT at 896, 903).  The third sustained objection was to the following remarks of defense counsel: "Ladies and gentlemen … I've spoken to you for a long time.  And all I could say is this: when you get stew or soup and something in it is rotten, you don't pick out the one piece and eat the rest.  You throw out the whole thing…And in this case I am asking you to throw out the whole stew and find my client not guilty."  <u>Id.</u> at 448 (TT at 918).

On petitioner's appeal, the Appellate Division cited New York's contemporaneous objection rule (NY CPL § 470.05[2]) in holding that "[petitioner's] contention that the trial court violated his right to a fair trial …by improperly curtailing his right to present an effective argument in summation is unpreserved for appellate review."  <u>Desjardins</u>, 113 A.D.3d at 788. The court also held that, "[i]any event, the trial court properly limited defense counsel's summation remarks under the circumstances of this case" and that petitioner was therefore "not deprived of his right to a fair trial."  <u>Id.</u>

The state court's determination that the summation/fair trial claim is unpreserved is a denial of that claim on an independent and adequate state law ground, which habeas courts treat as a procedural bar rendering the claim unreviewable.  <u>See</u> <u>generally</u> <u>Davila v. Davis</u>, 137 S. Ct.

2058, 2064 (2017); Coleman v. Thompson, 501 U.S. 722, 729 (1991).[10]  The bar erected by the independent and adequate state law doctrine may be lifted only if a petitioner demonstrates either "cause" for failing to comply with the state rule and "actual prejudice" if the claim is not reached, or that a lack of federal review will result in a fundamental miscarriage of justice because he is actually innocent.  Harris v. Reed, 489 U.S. 255, 262 (1989); Wainwright v. Sykes, 433 U.S. 72, 87 (1977).  Petitioner has not addressed this feature of his claim and the Court need not reach these separate procedural inquires because, even if the claim were reviewable, it would not entitle petitioner to habeas relief.

One of the sustained objections that petitioner challenges involves counsel's discussion of reasonable doubt concerning the fourth robbery—and, as noted, the Appellate Division dismissed the charges relating to that robbery on sufficiency grounds, so the portion of the claim based on that objection is moot.   As for the remaining two challenged objections, the Appellate Division's conclusion that the trial court acted properly under the circumstances (presumably on the theory that counsel was veering inappropriately into commentary upon the law rather than merely arguing the facts) is not unreasonable.  In any event, counsel argued that features of the record established reasonable doubt at least ten other times during his summation.  See ECF No.

---

[10] A state procedural bar "is 'adequate' if it 'is firmly established and regularly followed by the state in question' in the specific circumstances presented." Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007) (internal quotation and citation omitted), cert. denied, 552 U.S. 1150 (2008) (quoting, Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006)). The requirement that an issue be preserved by contemporaneous objection as required by NY CPL § 470.05(2) is a firmly established and regularly followed rule for these purposes. Richardson v. Greene, 497 F. 3d 212, 217-18 (2d Cir. 2007); Petronio v. Walsh, 736 F. Supp. 2d 640, 653 (E.D.N.Y. 2010). This bar applies "even where," as here, "the state court has also ruled in the alternative on the merits of the federal claim." Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Harris v. Reed, 489 U.S. 255, 264 n. 10, (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding") (emphasis in original).

6-4 at 388-91, 397, 405, 429, 431, 438 (TT at 858-61, 867, 875, 899, 900, 908).  Likewise, the

theme of the objected-to remark urging jurors to throw out the whole stew if one piece is rotten

was also separately made at another point in the summation.  Id. at 397 (TT at 867) ("I submit to

you, because the government is saying my client committed all five robberies, if you have a

reasonable doubt as to one, then you have a reasonable doubt as to all five robberies.").  For

these reasons petitioner could not possibly establish that he was prejudiced by the court's limited

curtailment of his counsel's summation.  And the absence of prejudice ends the inquiry.

Therefore, the Appellate Division's determination that the minor curtailing of counsel's

summation did not deprive petitioner of his rights to present an effective argument and to a fair

trial cannot be considered factually unreasonable or an unreasonable application of Supreme

Court fair-trial holdings within the meaning of AEDPA.  See generally Crane v. Kentucky, 476

U.S. 683, 690 (1986) (recognizing that "the Constitution guarantees criminal defendants a

meaningful opportunity to present a complete defense").

       3.     The Excessive-Sentence Claim.

      Petitioner claims that his twenty-three year sentence is unduly harsh because no one was

injured and no violence occurred in the commission of the robberies.  Although petitioner

challenged his sentence in state court as illegal,[11] he does not do so here; indeed, that claim

---

[11] In a motion to vacate pursuant to N.Y.C.P.L. § 440.20, petitioner argued, unsuccessfully, that his prison sentence of twenty-three years plus five years' post-release supervision was illegal under the 25-year maximum set by New York Penal Law § 70.06 for a class B felony offense (such as first-degree robbery) committed by a second felony offender.  See People v. Desjardins, Dec. & Order, Oct. 4, 2014, at p. 2, ECF No. 6-1 at 112 (holding that under New York law post-release supervision "is 'additional' to" the sentence of incarceration and that petitioner's sentence "fully complies with" the applicable New York sentencing statutes). The petition does not include this illegal-sentence claim

would be meritless, as each component of petitioner's sentence falls within the range prescribed

by New York's non-violent second felony offender statute.  See N.Y. Penal Law § 70.06 (3)(b).[12]

That ends the constitutional inquiry for purposes of his application for habeas relief.  See Cruz v.

Griffin, 2019 WL 6220806, at *19 (S.D.N.Y. Oct. 24, 2019) ("It is well settled that when a

sentence is in accord with the range established by state statutory law there is no constitutional

issue presented for habeas review," citing White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992)).

See also Mitchell v. Rock, 11-CV-2642 (JG), 2013 WL 4041545, at *14 (E.D.N.Y. Aug 9, 2013)

("Under well-settled federal constitutional law, there is no claim for cruel and unusual

punishment where the sentence is within the range prescribed by state law"), app. dismissed, 2d

Cir. No. 13-3126 (2d Cir. Nov. 7, 2013).

---

[12] Under New York law, first-degree robbery a class B felony, P.L. § 160.5, and section
70.06(3)(b) provides that the sentence for a second felon convicted of a class B felony "must be
at least nine years and must not exceed twenty-five years." The 23-year term imposed on
petitioner's first-degree counts, therefore, is legal.  Second-degree robbery is a class C felony,
P.L. § 160.10, and for that category of crimes, section 70.06(3)(c) requires a sentence of between
six and fifteen years.  The 15-year sentence imposed on petitioner's second-degree counts is
lawful.  Finally, criminal possession of stolen property in the third-degree is a class D felony,
P.L. § 165.50, and for such crimes section 70.06(3)(d) requires a sentence of between four and
seven years.  The term of 3½ to 7 years imposed on petitioner's conviction for this crime is legal.

**CONCLUSION**

For all the reasons discussed, the application of petitioner Jocelyn Desjardins for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety.  Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
          August 17, 2021

                                        _____s/_____
                                        RAYMOND J. DEARIE
                                        United States District Judge

19